*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re FEATHERLY/CONANT/ROBINSON, Minors.

UNPUBLISHED
October 27, 2022

No. 361495
Montcalm Circuit Court
Family Division
LC No. 2014-000666-NA

Before: SHAPIRO, P.J., and GADOLA and YATES, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor children under MCL 712A.19b(3)(c), (g), and (j). We affirm.

## I. FACTS

In October 2020, respondent and her six children were living together with Billy Robinson,[1] the father of five of the children, when Child Protective Services (CPS) investigated reports of physical neglect and improper supervision of the children. CPS was advised that one of the children, MR, was missing school, was dirty and without socks when he attended school, constantly referred to Robinson, as "the devil," and reported witnessing a physical fight between Robinson and his stepfather. Respondent had a history of CPS involvement; in 2017, one of the children tested positive at birth for marijuana, and in 2016, CPS substantiated reports of domestic violence between respondent and Robinson. In 2020, the youngest child had been removed from respondent's care after respondent allegedly abandoned the child at the hospital after she was born.

In November 2020, CPS was informed that respondent was engaged in methamphetamine use and sex trafficking. CPS workers visited the home and found that although is was 2:00 p.m., the children were not in school and they had to wake respondent and Robinson. The youngest child, then five months old, was without clothes or a diaper and was wet. CPS spoke with the children, one of whom (MR) reported that he had seen Robinson choke respondent and push her onto the bed by the throat. CPS learned that during that incident MR called the police for

---

[1] Robinson died in February 2022, while this case was pending before the trial court.

assistance. Respondent had bruising on her neck, cheeks, and hands consistent with the reported incident, but denied that the incident had occurred. The CPS workers also learned that Robinson had been charged earlier that year of carrying a concealed weapon. The CPS workers offered to provide the family with services and scheduled a Family Team meeting, but respondent declined to participate.

Petitioner sought an order from the trial court removing the children from respondent's and Robinson's care and authorizing the filing of the petition. The petition outlined a number of previous investigations involving respondent's neglect of the children, respondent's history of methamphetamine use, and violence in the home involving respondent and Robinson. At the conclusion of the hearing on December 7, 2020, the trial court authorized the filing of the petition and ordered that the children be removed from the home.

According to petitioner, the barriers to reunification of the children with respondent were respondent's emotional instability, substance abuse, lack of parenting skills, domestic violence, lack of employment, and lack of resource management. Petitioner offered respondent and Robinson numerous services to remove the barriers, including supervised parenting time, drug testing, psychological testing, counseling, domestic violence prevention classes, and parenting classes. Respondent did not participate in any of the services offered other than supervised parenting time.

In April 2021, the trial court granted petitioner's motion to suspend parenting time. At the hearing on the motion, the foster care caseworker testified that the six children were at that time between the ages of almost one year old and 13 years old. After the children's removal from the home, respondent and Robinson had been provided separate supervised parenting time with the children. The foster care caseworker testified that the visits were chaotic; the children ran through the building yelling, screaming, and hitting, biting, and scratching each other. The children did not listen to nor follow instructions. Respondent exhibited anger and inability to control the children; she called the foster mother obscene names in front of the children and told the children that the foster care workers were to blame for the situation. Respondent did not nurture the children; she instead made angry statements to the children, sometimes grabbed or restrained them physically, and threatened not to visit them in the future. The children's foster parents reported that after the visits, the younger children demonstrated anger and threw tantrums, while the youngest child regressed in potty training. Respondent blamed the children's behavior on the foster homes.

After delays caused by the COVID-19 pandemic, the adjudication trial was held July 7 and 8, 2021, at the conclusion of which the jury determined that the trial court had jurisdiction over the children. The trial court held a dispositional hearing August 4, 2021, and thereafter adopted the recommendations of the foster care worker, ordering that the children remain in foster care, and that respondent participate in a psychological evaluation, counseling if indicated by the evaluation, domestic violence education and counseling, random drug screening, substance abuse assessment, substance abuse therapy or counseling if indicated, AA or NA if indicated, and parenting classes. Respondent also was ordered to maintain adequate housing, obtain and maintain employment, and participate in Family Team meetings with petitioner.

At the review hearing held November 2, 2021, the foster care caseworker testified that respondent had not participated in any of the ordered services. Respondent had participated in only one drug screen during which she tested positive for amphetamine and methamphetamine. The trial court cautioned respondent that she would not be reunified with the children unless she participated in the ordered services.

At the review hearing held February 1, 2022, petitioner and the guardian ad litem (GAL) informed the trial court that respondent was not participating in the case service plan and, in connection with criminal charges, had tested positive in the district court for methamphetamine and amphetamine. The trial court found that respondent was not participating in the case service plan and cautioned respondent that she had "one last opportunity" to participate in services before the next review hearing if she wished to avoid termination of her parental rights.

At the review hearing held March 15, 2022, the GAL informed the trial court that respondent had made efforts to comply with the case service plan after the February hearing by participating in a psychological evaluation and participating in random drug screens, which were negative. Respondent also had begun domestic violence counseling in the week before the review hearing, and had completed two sessions of an online parenting class. The GAL opined that respondent's efforts in the days before the hearing were not adequate to rectify the barriers to reunification. Petitioner similarly reported that respondent had not benefitted from her last-minute efforts to participate in services and recommended that the goal be changed to termination. At the conclusion of the review hearing, the trial court ordered that the goal be changed from reunification to termination. The trial court found that petitioner had made reasonable efforts to reunify respondent with the children and directed petitioner to end its reunification efforts. The trial court stated that respondent was no longer ordered to comply with the case service plan, but could continue to participate in the case service plan if she wished to do so.

The termination hearing was held May 13, 2022. The foster care caseworker testified that the barriers to reunification for respondent continued to be her emotional instability, substance abuse, lack of parenting skills, domestic violence, and lack of housing, employment, and resource management. The foster care caseworker testified that respondent had not substantially completed any part of the case service plan. Respondent continued to deny her substance use even after testing positive for methamphetamine, and also denied that the children witnessed domestic violence in the home, despite the fact that the children reported witnessing the violence. The caseworker also testified that respondent had been hostile and uncooperative when interacting with petitioner and that the children would be at risk of harm if returned to respondent's care.

Respondent testified that she began participating in the offered services after receiving an "ultimatum" from the trial court at the February 1, 2022 hearing. Respondent testified that she did not have "any solid excuses" for her failure to participate in the case service plan before February 2022, but blamed the hostility between herself and the caseworker. Respondent requested that the trial court focus on her progress in the weeks following the February 1, 2022 hearing and requested that she be given additional time to work on the case service plan.

At the conclusion of the termination hearing, the trial court found that petitioner had made reasonable efforts to preserve and reunify the family but that those efforts were unsuccessful. The trial court found that respondent did nothing to remove the barriers to reunification until February

or March 2022, at which point it was too late for respondent to make the progress necessary before termination was warranted. The trial court noted that respondent had recently participated in a psychological evaluation, the results of which indicated that respondent required at least one year of intense therapy and counseling to address her emotional issues. The trial court found that statutory bases for termination existed under MCL 712A.19b(3)(c), (g), and (j). The trial court also found by a preponderance of the evidence that it was in the children's best interests to terminate respondent's parental rights. Respondent now appeals.

## II. DISCUSSION

### A. REASONABLE EFFORTS

Respondent contends that the trial court erred by determining at the March 15, 2022 review hearing that petitioner no longer was required to make reasonable efforts to reunify respondent with the children. We disagree.

Before seeking termination of parental rights, the Department of Health and Human Services (DHHS) generally has an affirmative duty to make reasonable efforts to reunify a parent with the child. *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c), and MCL 712A.19a(2). Absent aggravating circumstances under MCL 712A.19a(2), when a child is removed from a parent's custody, the petitioner is required to exert reasonable efforts to rectify the conditions that led to the child's removal by adopting a service plan outlining the steps that both the DHHS and the parent will take to rectify the conditions that led to the court's involvement and thereby achieve reunification. *In re Sanborn*, 337 Mich App 252, 258-259; 976 NW2d 44 (2021). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009).

Although the DHHS must "expend reasonable efforts to provide services to secure reunification" of the parent and the child, the respondent parent has a "commensurate responsibility . . . to participate in the services that are offered," *In re Atchley*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 358502; 358503); slip op at 2, quoting *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). The parent also must demonstrate that he or she sufficiently benefitted from the services. *In re Atchley*, ___ Mich App at ___; slip op at 2

In this case, petitioner provided respondent with numerous services to reunify respondent with her children. The barriers to reunification were respondent's substance use, emotional instability, lack of parenting skills, domestic violence, and economic instability. To address those barriers, petitioner offered respondent numerous services including psychological evaluation, drug testing, counseling, parenting classes, and domestic violence counseling. The record supports the trial court's finding that respondent failed to participate in the services offered until approximately three months before the termination hearing, at which time respondent participated in a psychological evaluation, drug testing, two sessions of a parenting class, and began domestic violence counseling. These efforts, begun shortly before termination, were not adequate to remove the barriers to reunification. Respondent thus failed in her commensurate duty to participate in and benefit from the offered services. See *In re Atchley*, ___ Mich App at ___; slip op at 2.

-4-

Respondent argues, however, that regardless of whether petitioner made reasonable efforts, the trial court erred when, at the conclusion of the March 15, 2022 hearing, the trial court changed the goal from reunification to termination and directed petitioner to stop making reasonable efforts toward reunification. We observe, however, that the DHHS is required "to make reasonable efforts to reunify a family *before* seeking termination of parental rights." *In re Hicks*, 500 Mich at 85 (emphasis added). As noted, reasonable efforts begin with the creation of a case service plan to rectify the conditions that led to the removal of the children with the goal of reunification. *Id*. at 85-86. Here, petitioner made reasonable efforts to reunify the family before seeking termination of respondent's parental rights and created a case service plan; respondent declined to participate in the reunification efforts. After respondent failed to make progress for over 15 months, the trial court changed the goal from reunification to termination. Under these circumstances, the trial court did not err by directing petitioner to no longer pursue the goal of reunification. We also observe that the trial court did not preclude respondent from continuing to comply with the case service plan. Rather, the trial court advised respondent that although the trial court no longer was ordering respondent to participate in the case service plan, she could "continue to participate in [the] case service plan if she so desires."

In sum, respondent raises no valid challenge to the reasonableness of petitioner's efforts. Petitioner offered respondent numerous services aimed at removing the barriers to reunification of respondent with her children, but respondent declined to participate in the offered services until shortly before termination. The trial court did not err by directing petitioner to discontinue its efforts toward reunification after the goal was changed to termination.

## B. STATUTORY BASIS

Respondent contends that the trial court erred by finding that clear and convincing evidence demonstrated a statutory basis for termination of her parental rights. We disagree.

We review for clear error the trial court's determination that clear and convincing evidence demonstrates a statutory basis to terminate parental rights, as well as the trial court's factual findings. *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018). The trial court's factual findings are clearly erroneous if we are firmly and definitely convinced that the trial court made a mistake. *Id*. We will not conclude that a trial court's finding is clearly erroneous unless it is more than possibly or probably incorrect. *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

To terminate parental rights, the trial court must find that at least one basis for termination under MCL 712A.19b(3) has been proven by clear and convincing evidence. *In re Keillor*, 325 Mich App at 85. In this case, the trial court found clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(c),[2] (g), and (j), which provide:

---

[2] The trial court did not specify that it was ruling under subsection (i) of MCL 712A.19b(3)(c), but the trial court's findings relate to that subsection.

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

We note that the termination of parental rights requires the petitioner to establish only one statutory basis under MCL 712A.19b(3). *In re Martin*, 316 Mich App 73, 90; 896 NW2d 452 (2016). Here, the record supports the trial court's findings that termination was warranted under MCL 712A.19b(3)(c)(*i*), (g), and (j). The barriers to respondent's reunification with her children remained the same at the time of termination as they had been when the children were removed from her care in late 2020. Respondent failed to participate in the offered reunification services until the eve of termination and realized no benefit from the services, warranting termination under subsection (c)(*i*). A parent's failure to benefit from services is evidence that the parent will not be able to provide the child with proper care and custody within a reasonable time, warranting termination under subsection (g). See *In re White*, 303 Mich App 701, 710-711; 846 NW2d 61 (2014). In addition, a parent's failure to benefit from a service plan is evidence that the child will be harmed if returned to the parent's home, warranting termination under MCL 712A.19b(3)(j). *Id*. In this case, until shortly before her parental rights were terminated, respondent refused to participate in services to address her substance abuse, lack of parenting skills, and domestic violence. She denied her substance use and the domestic violence in the home, and blamed the foster care workers and the foster parents for the children's trauma. The trial court therefore did not clearly err by finding that clear and convincing evidence supported termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j).

Respondent acknowledges that barriers to reunification continued to exist at the time of termination, but argues that after the trial court warned her at the February 1, 2022 review hearing

that she had one last chance to participate in services before the goal was changed to termination, she was not given sufficient time to demonstrate that she could improve through services. The question, however, is not whether respondent had ample time to rectify the situation after the February 1, 2022 review hearing; rather, the question is whether a statutory basis for termination was established by clear and convincing evidence, which may be established by a parent's failure to comply with a case service plan. Here, respondent did not participate in nor benefit from services to remove the barriers to reunification after the children were removed from her care in late 2020, and continued to refuse to participate in services after the trial court ordered her to comply with services at the dispositional hearing in August 2021. Though frequently cautioned by the trial court that her failure to participate in and benefit from services would lead to termination of her parental rights, respondent did not begin to participate in services until February 2022, shortly before the trial court ordered that the goal be changed from reunification to termination.

Respondent argues that her lack of participation should be excused because disposition in this matter did not occur until eight months after removal due to delays caused by the COVID-19 pandemic, leaving only seven months after the disposition before the goal was changed to termination. However, under MCL 712A.19b(3)(c)(*i*), the trial court may terminate the respondent's parental rights if 182 days, i.e., six months, have elapsed since the issuance of the dispositional order if the conditions that led to adjudication continue to exist. Moreover, the children were removed from respondent's care in December 2020, yet respondent did not make any effort to regain custody of the children until February 2022. We conclude that respondent has not established that the trial court erred by finding a statutory basis to terminate her parental rights.

## C. BEST INTERESTS

Respondent also contends that the trial court clearly erred because it failed to sufficiently explain its determination that termination of respondent's parental rights was in the best interests of the children. We disagree.

Once a statutory basis for termination has been demonstrated, the trial court is required to terminate the parent's parental rights if a preponderance of the evidence establishes that termination is in the best interests of the child. MCL 712A.19b(5); *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016). We review for clear error the trial court's decision regarding a child's best interests. *Id*. at 226.

When determining whether the termination of a parent's rights is in the best interests of the child, the trial court should weigh all the available evidence, and consider a variety of factors that may include the parent-child bond, the parenting ability of the parent, the child's need for permanency, stability, and finality, the advantages of a foster home over the parent's home, the parent's compliance with the case service plan, the child's well-being in the foster home, and the possibility of adoption. *In re White*, 303 Mich App at 713. The trial court also should consider the child's safety and well-being, including the risk of harm to the child if returned to the parent's care. See *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011). Additional considerations are the parent's history of domestic violence, the parent's visitation history with the child, and the child's well-being while in care. *In re White*, 303 Mich App at 713-714; see also *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 64; 874 NW2d 205 (2015). Although the trial

court should consider each child individually, the trial court is not required to make "individual" and "redundant" factual findings if the best interests of the children do not differ. *In re White*, 303 Mich App at 715-716.

In this case, a review of the record demonstrates that the trial court considered relevant factors when determining the best interests of the children. The trial court specifically considered the trauma the children had experienced from witnessing domestic violence in the home and respondent's denial that it had occurred, respondent's lack of parenting ability, respondent's substance abuse and her denial of the problem, respondent's lack of employment or other source of income, and her refusal to participate in the case service plan to rectify these problems. The trial court specifically found that the four oldest children had witnessed violence in respondent's home, resulting in post-traumatic stress disorder, but respondent continued to deny that the violence occurred. Regarding the two youngest children, the trial court determined that it was in their best interests to terminate respondent's parental rights because it was not safe for them to return to respondent's care and custody in light of her failure to participate in the case service plan and her denial of her lack of parenting skills. Although respondent argues that the trial court should have specifically considered additional factors in determining the children's best interests, she does not specify which additional factors the trial court should have considered and why those factors are relevant or determinative in this case. We therefore conclude that the trial court did not clearly err by determining that termination was in the best interests of the children.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michael F. Gadola
/s/ Christopher P. Yates